IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPRINGBOARDS TO EDUCATION,          §
INC.,                               §
                                    §
              Plaintiff,            §
                                    §
VS.                                 §          Civil Action No. 3:16-CV-2512-D
                                    §
FAMILIES IN SCHOOLS,                §
                                    §
              Defendant.            §

MEMORANDUM OPINION
AND ORDER

        In this suit for trademark infringement and related claims, defendant moves to dismiss

for lack of personal jurisdiction, or, alternatively, to transfer the case to the Central District

of California.  This case presents a wrinkle in that the court has already determined in the

default-judgment context that plaintiff *has* established that the court has personal jurisdiction

based on defendant's operation of its website.  But in the present, non-default-judgment

context, and for the reasons that follow, the court holds that it lacks personal jurisdiction and

grants defendant's alternative motion to transfer this case to the Central District of California,

Western Division, pursuant to 28 U.S.C. § 1406(a).

I

        This dispute stems from the use of the name "Million Word Challenge."  Plaintiff

Springboards to Education, Inc. ("Springboards") designs, markets, and sells reading and

related educational products under the Springboard brand and its associated federally-

registered trademarks, including the trademarks "Millionaire Reader," "Million Dollar

Reader," "Millionaire's Reading Club," and "Read A Million Words." Defendant Families In Schools ("FIS") is a California nonprofit organization whose mission is to involve parents and communities in their children's education, targeting low-income communities and communities of color through programs such as, *inter alia*, the "Million Word Challenge," which it maintains is a public awareness campaign "developed in 2002 in response to a lack of access to bookstores and libraries in Los Angeles' low-income communities." D. Br. 4. FIS contends that, although some of its workshops and programs are offered outside California, the Million Word Challenge was designed for implementation solely in the Los Angeles County schools, and that only a single participant—Andre Agassi College Preparatory Academy in Las Vegas, Nevada—has come from outside the state of California.

In this lawsuit, Springboards sues FIS for trademark counterfeiting, under 15 U.S.C. § 1114; trademark infringement, under 15 U.S.C. § 1114; false designations of origin false descriptions, under 15 U.S.C. § 1125(a); trademark dilution, under 15 U.S.C. § 1125(e); violation of the Texas anti-dilution statute, Tex. Bus. & Com. Code Ann. § 16.103; common law trademark infringement; and common law unfair competition. Springboards alleges, *inter alia*, that "[t]his Court has personal jurisdiction over Defendant by way of the Texas long-arm statute because Defendant transacts a sufficient amount of business in Texas throughout the use of its interactive website and promotional materials." Compl. ¶ 10.

Springboards served FIS with process in October 2016. After FIS failed to answer or otherwise respond to Springboards' complaint, Springboards requested entry of a default and moved for a default judgment. In April 2017 the court held a hearing on Springboards'

motion.  FIS did not appear.[1]  During the hearing, Springboards' counsel presented evidence on the issue of personal jurisdiction,[2] and the court held, in pertinent part:

> plaintiff has proved specific in personam jurisdiction by a preponderance of the evidence based upon the witness's testimony that establishes the presence of the interactive website in Texas and that itself contains infringing material. . . .  The Fifth Circuit when analyzing in personam jurisdiction based on a website uses a sliding scale that originated in the *Zippo* case . . . and the nature of this website is sufficient to establish specific jurisdiction, and that is supported by the evidence of the way the website works in relation to a person known to be in Texas and the content of the website which contains infringing material.

Hrg. Tr. 38.  Based on these findings and conclusions, the court entered a default judgment against FIS.

Thereafter, FIS filed, *inter alia*, a motion to vacate default judgment.  After conducting a hearing on the motion, the court entered an order stating that it would set aside the default judgment on the condition that FIS first pay to Springboards its reasonable attorney's fees and costs incurred in obtaining the default judgment and opposing FIS's post-judgment motions.  The court also stated that, "[a]fter the default judgment is set aside, FIS will be permitted to file a timely responsive pleading.  The responsive pleading may

---

[1]Because the details are immaterial to the present decision, the court is omitting a discussion of the insufficient procedures that FIS engaged in before the court entered the default judgment.

[2]Although FIS failed to file a responsive pleading, it did through correspondence object to the exercise of personal jurisdiction, and, as a result, the court at the default judgment hearing inquired whether Springboards would present evidence in support of personal jurisdiction, *see* Hrg. Tr. 4, which it did.

challenge the court's exercise of personal jurisdiction over FIS, and Springboards' response may assert that FIS has waived its challenge to the court's exercise of personal jurisdiction." July 6, 2017 Am. Order at 2. The court later entered an order recognizing that FIS had satisfied the court-imposed condition for setting aside and vacating the default judgment.

FIS now moves to dismiss this action under Fed. R. Civ. P. 12(b)(2) on the ground that the reach of the "Million Word Challenge" is intended to go no farther than Los Angeles County, California, and that Springboards cannot make a prima facie showing that FIS purposefully directed its activities at residents of Texas or that this lawsuit is the result of alleged injuries that arose out of, or are related to, the use of the "Million Word Challenge," as directed to the state of Texas. FIS moves in the alternative to transfer this lawsuit to the United States District Court for the Central District of California.

II

The court must first determine whether it can exercise personal jurisdiction over FIS.

The Lanham Act does not authorize nationwide service of process. *See, e.g., Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 371 (N.D. Tex. 2010) (Fitzwater, C.J.). Accordingly, absent a controlling federal statute regarding service of process, the determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court next resolves whether the exercise of personal jurisdiction is consistent with due process under the United States

Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over FIS would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).[3]

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. For the court to properly exercise specific personal jurisdiction, the defendant must have "purposefully directed" its activities at residents of the forum, and the litigation must result from alleged injuries that "arise out

---

[3]To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

of or relate to" the defendant's activities directed at the forum. *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

General jurisdiction allows a court to exercise personal jurisdiction over a defendant even when the defendant's contacts with the forum state are unrelated to the cause of action. *See Mink*, 190 F.3d at 336. For a court to exercise general jurisdiction, a defendant's contacts must be "continuous and systematic." *Id*. (citations omitted). General jurisdiction over a foreign corporation is proper "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 751 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The district court usually resolves the jurisdictional issue without conducting a hearing. *See Ham*, 4 F.3d at 415.

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). This liberal standard does not require the court to credit conclusory allegations, even if they remain uncontradicted. *See, e.g., Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept.

15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

## III

The due process inquiry begins with determining whether FIS has sufficient contacts with the forum state of Texas. *See Mink*, 190 F.3d at 336. Springboards has the burden of establishing FIS's minimum contacts. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)

### A

Springboards does not appear to rely on general jurisdiction to establish that the court can exercise *in personam* jurisdiction over FIS. The court will therefore turn to whether Springboards has established that the court can exercise specific jurisdiction.

### B

FIS's motion to dismiss turns on whether the operation of its website ("Website") constitutes "minimum contacts" with Texas. *See Tempur-Pedic*, 758 F.Supp.2d at 373. But before the court decides that question, it must address a procedural matter that involves its decision at the default judgment stage that Springboards proved specific *in personam* jurisdiction by a preponderance of the evidence.

As noted above, the court vacated the default judgment, and, in doing so, it explicitly concluded that FIS could file a timely responsive pleading that challenges the court's exercise of personal jurisdiction over FIS. FIS has challenged this court's exercise of personal jurisdiction, so the court is no longer basing its jurisdictional determination solely

-7-

on the uncontested evidence presented at the default judgment hearing. Instead, the court is deciding the personal jurisdiction question as a contested matter.

The court is opting—as in the usual case—to decide the personal jurisdiction question without conducting an evidentiary hearing. This means from a substantive standpoint that Springboards can satisfy its burden merely by presenting a prima facie case for personal jurisdiction. And from a procedural standpoint, it means that, in deciding FIS's motion, the court must accept as true the uncontroverted allegations of Springboards' complaint and resolve in Springboards' favor any factual conflicts posed by the affidavits. Although the usual formulation of the no-hearing procedure refers to "affidavits," when considering a motion to dismiss for lack of personal jurisdiction, a court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized methods of discovery. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

In this case, Springboards has alleged in its complaint that the court has personal jurisdiction over FIS through "the use of [FIS's] interactive website and promotional materials," Compl. ¶ 10, and FIS has refuted Springboards' allegations through the affidavit of its President and Chief Executive Officer, D. App. 268-273. Because the allegations of Springboards' complaint are controverted, it must introduce evidence that, accepted as true, makes a prima facie showing of personal jurisdiction. Rather than present supporting affidavits, Springboards relies on the evidence that it introduced at the default judgment hearing. The question thus becomes whether this evidence, accepted as true, is sufficient to make a prima facie showing of personal jurisdiction when assessed against FIS's

controverting evidence.

C

When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 900-01, 900 n.10 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Mink*, 190 F.3d at 336 (interpreting *Zippo*)). *Zippo* requires the court to assess the level of interactivity of the defendant's website and prescribes a separate course of action for each of the three categories of websites: (1) where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; (2) where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and (3) where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the [w]ebsite." *Mink*, 190 F.3d at 336.

The FIS Website falls in the middle of the *Zippo* sliding scale. Springboards maintains that FIS operates an "interactive website" and contends that, at the default judgment hearing, it "established the interactivity of Defendant's website, negating any argument that such was merely passive." P. Br. 4-5. FIS does not dispute that its Website is "interactive." Nor does it dispute evidence presented at the default judgment hearing that the Website has a landing page where visitors can input their email addresses to receive a

newsletter from FIS; that visitors to the Website can make a donation to FIS via the Website; or that visitors to the Website can request information on FIS's products and services. The court concludes that this evidence "establish[es] that the Website does more than passively exist for advertising purposes." *Autoflex Leasing-Dall. I, LLC v. Autoflex LLC*, 2017 WL 713667, at *4 (N.D. Tex. Feb. 23, 2017) (Fitzwater, J.). But the Website only permits users to communicate and exchange contact, credit, and payment information with FIS. *Id.* Therefore, the Website falls in the middle of the *Zippo* scale. *Id.* (citing *Am. Eyewear*, 106 F.Supp.2d at 901); *see also People Sols., Inc. v. People Sols., Inc.*, 2000 WL 1030619, at *3-4 (N.D. Tex. July 25, 2000) (Lindsay, J.) (holding that interactive website allowing users to view products, download brochures, fill out forms, and place orders online fell in the *Zippo* middle ground).

Having determined that the Website falls in the middle of the *Zippo* scale, the court next examines the interactivity and commercial nature of exchanged information. *See Mink*, 190 F.3d at 336. "In undertaking that examination, '[t]he critical inquiry, . . . as with any personal jurisdiction case, is whether the contacts suggest that the nonresident defendant purposefully directed its activities toward the forum state or purposefully availed itself of the privilege of conducting activities within the forum state.'" *Springboards to Educ., Inc. v. Hamilton Cnty. Read 20*, 2017 WL 3023489, at *4 (N.D. Tex. July 14, 2017) (Boyle, J.) (alteration and ellipses in original) (quoting *Mothers Against Drunk Driving v. DAMMADD, Inc.*, 2003 WL 292162, at *5 (N.D. Tex. Feb. 7, 2003) (Fish, C.J.)).

In its brief, Springboards contends that

> [a]s shown at the hearing, there was actual contacts and/or contracts between a Texas resident and Defendant's interactive website; there was nothing hypothetical al-a *Autoflex*. It is beyond "mere possibility" that a Texas resident would be targeted by Defendant's interactive website and would in fact contact and/or contract with Defendant, it happened, as shown by testimony at the hearing.

P. Br. 5. Although Springboards does not cite any evidence in support of its arguments, the court assumes that the "actual contacts and/or contracts" to which Springboards refers are the contacts that occurred and contracts created when its attorney visited FIS's website and made a donation to FIS in order to establish personal jurisdiction for purposes of this lawsuit. *See* Hrg. Tr. 9-11 (testimony of Valerie Wilde, Esq. ("Wilde") that she had visited FIS's website "quite a bit," and that details the ways in which a Texas resident—i.e., Wilde—could interact with FIS via its website). This evidence, however, "fail[s] to meet the minimum threshold for specific jurisdiction." *Springboards to Educ.*, 2017 WL 3023489, at *4 (citation omitted).

Under *Zippo* personal jurisdiction is based on *actual* Internet sales to forum residents, not the mere possibility of sales. *See Mink*, 190 F.3d at 337 ("Absent a defendant doing business over the internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate."). As in *Autoflex*, there is no evidence that FIS has made any sales of its products in the state of Texas or to Texas residents. To the extent Springboards relies on its local attorney's donation to FIS via the Website, judges of this court have held that "voluntary donations . . . reflect a lack of regular

commercial activity required to exercise *in personam* jurisdiction based on Internet contacts."

*Springboards to Educ.*, 2017 WL 3023489, at *4 (citing *Mothers against Drunk Driving*,

2003 WL 292162, at *5). And while it is hypothetically possible that a Texas resident could

purchase FIS's products—assuming that FIS, in fact, offers products for purchase on its

Website—Springboards has not alleged that any Texas resident ever has. In fact, FIS has

produced uncontroverted evidence that of the many hundreds of schools and students who

have participated in the Million Word Challenge since 2011, only a single participant has

come from outside California. In sum, Springboards "fails to allege, let alone offer prima

facie proof, that a single disinterested Texas resident purchased an infringing product on

Defendant's website or, for that matter, accessed the website at all." *Id.* at *4 (citing *CMC

Steel Fabricators, Inc. v. Franklin Inv. Corp.*, 2016 WL 3418974, at *2 (N.D. Tex. June 22,

2016) (Boyle, J.)). The allegations of Springboards's complaint and the evidence that

Springboards introduced at the default judgment hearing fail to show that there is any

connection between FIS's Website and Texas or to identify any *actual* sales to Texas

residents. Thus the court concludes that FIS has failed to make a prima facie showing of the

minimum contacts necessary for the court to exercise specific personal jurisdiction over FIS.

*See, e.g., Autoflex*, 2017 WL 713667, at *5.

### D

In response to FIS's motion, Springboards requests "leave to amend a first amended

complaint of curable facts." P. Br. 1.

In deciding FIS's motion, the court has considered not only the jurisdictional

allegations of Springboards' complaint but the evidence and arguments in support of personal jurisdiction that Springboards presents in its response brief and presented during the default-judgment hearing. In moving for leave to amend, Springboards makes no attempt to explain what additional facts it would allege that would show that this court has *in personam* jurisdiction over FIS. Nor has it explained why, if it had those facts in its possession, it was unable to assert them in response to FIS's motion to dismiss. Because the court in deciding FIS's motion has already considered more than just the bare assertion of personal jurisdiction in Springboards' complaint, and because Springboards has not attempted to show what additional jurisdictional facts it would plead if permitted to do so in an amended complaint, the court denies the motion for leave to amend.

IV

Because Springboards has failed to make a prima facie showing of *in personam* jurisdiction, the court now decides whether this case should be dismissed or transferred.

A

When a district court lacks personal jurisdiction, it can dismiss the case pursuant to Rule 12(b)(2). *See Herman v. Cataphora*, 730 F.3d 460, 466 (5th Cir. 2013). Alternatively, if the court determines that transfer is "in the interest of justice," it can transfer the action to "any district or division in which it could have been brought." *See id.* (citation omitted) (quoting 28 U.S.C. § 1406(a)). Under § 1406(a), a court can order the transfer regardless of whether it has personal jurisdiction over the defendants. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S.

463, 466 (1962)). Section 1406(a) specifically applies when an action "lay[s] venue in the wrong division or district." 28 U.S.C. § 1406(a). Accordingly, transfer is proper when an obstacle prevents prompt adjudication of the case in the district where it was brought originally. *See Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985) (citing *Dubin v. United States*, 380 F.2d 813, 815-16 (5th Cir. 1967)). Lack of personal jurisdiction is one such obstacle. *See id.* Thus § 1406(a) facilitates transfer from a federal court lacking personal jurisdiction to one possessing it. *See Herman*, 730 F.3d at 466.

District courts have broad discretion in deciding whether to order a transfer. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). In some cases, "the interests of justice may be best served by requiring the plaintiffs to begin at the beginning in the proper forum." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (citations omitted). In others, "the 'interest of justice' instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them." *Chenevert v. Springer*, 2009 WL 2215115, at *4 (S.D. Tex. July 22, 2009) (citations omitted). The decision to transfer is often made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See, e.g., Mex. Foods, LLC v. Mi Rancho Meat Mkt.*, 2015 WL 891666, at *1 (N.D. Tex. Mar. 3, 2015) (Fitzwater, J.). Courts generally prefer transfer to dismissal. *Wolf Network, LLC v. AML Diagnostics, Inc.*, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016) (Boyle, J.) (citing *Scott v. U.S. Army*, 2008 WL 3914835, at *1 (W.D. Tex. June 30, 2008)) (noting trend favoring transfer over dismissal).

B

The court concludes that this case should be transferred rather than dismissed. As noted, FIS is a California corporation, regularly conducts business in California, and the events giving rise to Springboards' claims occurred in California. The California court can exercise personal jurisdiction over FIS. *See Burger King*, 471 U.S. at 472; *Daimler*, 134 S.Ct. at 751. The transfer saves both the parties and courts time and money. *See Mex. Foods*, 2015 WL 891666, at *1. And California is a proper venue for this lawsuit. See 28 U.S.C. § 1391(b)(1)-(3) (stating that venue is proper in judicial district where (1) defendants reside, (2) a substantial part of the events giving rise to the claim occurred, or (3) a court can exercise personal jurisdiction). The court therefore transfers this case to the Central District of California, Western Division.

\* \* \*

Accordingly, the court concludes that it lacks *in personam* jurisdiction and it grants defendant's alternative motion to transfer this lawsuit to the Central District of California, Western Division, pursuant to 28 U.S.C. § 1406(a).

**SO ORDERED**.

November 15, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE